UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| ANGELA BARNES, | ) | CASE NO. 1:19CV1483 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #31) of Defendant Midland Credit Management, Inc. for Summary Judgment. For the following reasons, the Motion is granted.

### I. FACTUAL BACKGROUND

On June 27, 2019, Plaintiff Angela Barnes filed the instant Complaint on behalf of herself and all similarly situated consumers for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff alleges that Defendant Midland Credit Management, Inc. sent out misleading and deceptive letters in an attempt to collect time-barred consumer debts.

This putative class action is based on Defendant's June 5, 2019 form collection letter

to Plaintiff (the "Letter"). Plaintiff alleges that Defendant's Letter sought to collect a debt from Plaintiff after the statute of limitations to sue on that debt had already expired. The Letter offered Plaintiff several different "discount" proposals, including proposals requiring that Plaintiff make multiple payments towards the debt. Further, the Letter recited: "Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid." The Letter did not, however, advise Plaintiff that if she agreed to one of the settlement proposals, she would remove the statute of limitations bar preventing Defendant from suing her to collect the debt. In addition, Defendant failed to warn Plaintiff that if she agreed to a partial payment then Defendant could sue her for the entire amount. The Complaint alleges that Defendant misled Plaintiff regarding the character and legal status of the debt. Defendant purportedly sent nearly identical letters to members of the putative class.

Defendant moves for summary judgment, arguing that Plaintiff has not suffered an actual injury sufficient to confer standing for her lawsuit and that the language in Defendant's collection letter, as a matter of law, does not violate the FDCPA.

Plaintiff opposes Defendant's Motion, contending that Defendant framed its dunning letters on time-barred debts as providing benefits and discounts to consumers while concealing the pitfalls of these purported benefits. Moreover, Plaintiff's receipt of Defendant's misleading Letter is sufficient on its own to confer standing without the need to show any additional harm. Nevertheless, Plaintiff was harmed, misled and confused by the Letter; and thus, has standing to pursue her FDCPA claim.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute,"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Article III Standing**

To sue in federal court, a plaintiff must have standing under Article III of the Constitution, which "limits the judicial power to resolving actual 'Cases' and 'Controversies.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020).

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must show three things to demonstrate standing: 1) an injury in fact that is concrete and particularized, as well as actual or imminent; 2) a causal relationship between the injury and the complained-of conduct; and 3) a likelihood that the injury can be redressed by a decision in the plaintiff's favor. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *N.E. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663-64 (1993).

For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo v. Robbins*, 136 S.Ct. 1540, 1548 (2016) (quotation marks and citation omitted). To be concrete, the injury must be real and not abstract. *Id*. However, the

injury need not be physical. *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679 (6th Cir. 1994). Even where the injury is non-physical, though, it must still personally affect the plaintiff. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, *Inc.*, 454 U.S. 464, 485 (1982).

The plaintiff bears the burden of alleging sufficient facts to demonstrate standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). "Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

Alleging a bare procedural violation of a federal statute is not enough. *Spokeo*, 136 S.Ct. at 1550. As the Sixth Circuit recently noted:

> One might think that a clear statutory directive to open the doors to court would be enough for standing. Not so. Because standing is a constitutional requirement, the fact that a statute purports to create a cause of action does not in isolation create standing. A plaintiff asserting a procedural claim (like an FDCPA violation) cannot bring a claim unless she has suffered a concrete injury of some kind. *Garland v. Orlans, PC.*, et al., 999 F.3d 432, 436 (6th Cir. 2021).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S.Ct. at 1549. "If a claimant has not suffered a genuine harm or risk of harm, a federal court has no business entertaining his lawsuit." *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 465 (6th Cir. 2019).

**Fair Debt Collection Practices Act (FDCPA)**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Id.* This

provision provides an illustrative (non-exhaustive) list of violations, including prohibiting a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). To violate § 1692e, a statement must be "materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer." *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014).

The Sixth Circuit has adopted the "least sophisticated consumer test" to analyze claims under the FDCPA. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611–12 (6th Cir. 2009) (*quoting Barany-Snyder v. Weiner*, 539 F.3d 327, 332–33 (6th Cir. 2008)). This standard aims to protect "the gullible as well as the shrewd" while still preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Hartman*, 569 F.3d at 611–12 (*quoting Barany-Snyder*, 539 F.3d at 332–33).

To show a violation of the FDCPA under 15 U.S.C. § 1692e, a plaintiff must satisfy the following elements: (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the debt arose "out of transactions which are 'primarily for personal, family or household purposes'"; (3) the defendant meets the FDCPA definition of a "debt collector"; and (4) the defendant violated the prohibitions set forth in 15 U.S.C. § 1692e. *See Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015) (*quoting Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)).

The FDCPA does not place "an affirmative duty on a debt collector to disclose to the consumer the applicability of the statue of limitations." *Newton*, No. 2:12-CV-698, 2014 WL

340414, at *10.  The Sixth Circuit has held that there is "nothing wrong with informing debtors that a debt remains unpaid" even if the debt is time-barred.  *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

The majority of courts considering the issue "have held that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts."  *Scheiner v. Portfolio Recovery Assocs., LLC*, No. CV 12-518-JGW, 2013 WL 12103069, at *7 (S.D. Ohio Nov. 5, 2013) (internal citations omitted).

Plaintiff insists that the receipt of Defendant's Letter, which omits the potential consequences of making a payment on an over-age debt, deprived her of the substantive right to receive truthful non-deceptive information and alone conferred Article III standing to pursue her claim.  Following the guidance of the Supreme Court in *Spokeo* and the Sixth Circuit in *Garland*, the Court is not persuaded that a bare procedural violation of a federal statute is enough.  The question before the Court, then, is whether Defendant's claimed violation of 15 U.S.C. § 1692e resulted in harm to Plaintiff which is sufficiently concrete for Article III standing purposes.

In her Deposition (ECF DKT #30), Plaintiff testified about the June 5, 2019 Letter from Defendant.  Her reaction was that she was "irritated."  (ECF DKT #30 at 34; 59).  She felt that she was being "hustled."  (ECF DKT #30 at 49; 59).  She was "concerned" whether she owed the debt and whether Defendant thought she was stupid.  (ECF DKT #30 at 52).  Plaintiff was "annoyed" that the Letter congratulated her and invited her to "restart the

[statute of limitations] clock." (ECF DKT #30 at 54). She did not believe what the Letter said since the terms could change if the debt were sold. (ECF DKT #30 at 56). Had she not known to ask questions and had she not known the law, Defendant's conduct "would have harmed her," "harmed her credit" and "gotten her sued." (ECF DKT #30 at 36). Plaintiff knew for a long time that starting payments on an old debt can "restart the clock" for reporting the debt and for being sued. (ECF DKT #30 at 48-49). The Letter seemed "wonky." (ECF DKT #30 at 67). Plaintiff was "irritated" that she had become a "target," particularly as a woman of color. (ECF DKT #30 at 69).

As for the closing statement in the Letter that due to the age of the debt Midland would not sue, Plaintiff testified that it "produces fear and anxiety." (ECF DKT #30 at 58). However, not for her because she understands the law; but for others who do not. (*Id*.). To Plaintiff, it is "open knowledge," but not to the masses like her parents. (ECF DKT #30 at 48). Plaintiff wondered how older people like her parents would be affected if they believed the "copy" in this Letter. (*Id*.). Plaintiff believes she is speaking on behalf of those who did not know they could be impacted negatively. According to Plaintiff, the Midland Letter is misleading and intended to produce anxiety and spread misinformation. (ECF DKT #30 at 74).

The Court finds that irritation, concern, feeling targeted or hustled are generalized emotional harms that do not create standing. Bare allegations of confusion and anxiety do not qualify as injuries in fact. *Garland*, 999 F.3d at 440. "Article III standing requires a concrete injury even in the context of a statutory violation." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620–21 (2020) (quoting Spokeo, 136 S.Ct. at 1549); *see also Hagy v. Demers & Adams*, 882

F.3d 616, 623 (6th Cir. 2018) ("That's just what we take *Spokeo* to mean when it said that 'Congress cannot erase Article III's standing requirement.'" (*quoting Spokeo*, 136 S. Ct. at 1547–48)). Moreover, confusion, fear and anxiety hypothetically produced in third persons are not the particularized, personal injuries required under Article III.

Since *Spokeo*, a plaintiff claiming a statutory violation must do more and must show a ***material risk of real harm to a concrete interest***, not merely a "marginal increase" in the risk of harm. *McCloud v. Save-A-Lot Knoxville, LLC*, 388 F.Supp.3d 954, 968 (E.D.Tenn. 2019). (Emphasis added).

Plaintiff asserts that Defendant violated the FDCPA because the Letter poses a material risk of harm. Plaintiff contends that Midland's policy of refraining from filing suit on an over-age debt could change at any time or could change with the sale of the debt to another collection agency. Defendant's representative, Bernadette Canez, testified that Midland's policy could conceivably change but only on a "go-forward basis." (ECF DKT #33-4 at 6-8). "Even if the policy changed, we would not go backwards for Ms. Barnes or any other consumer that had already received that treatment and change the treatment. It would be for anybody on a go-forward basis as of the date of the change." (*Id*.). Ms. Canez agreed, hypothetically, that another entity purchasing debts from Defendant could alter the policy and sue on debts outside the statute of limitations; but she would have no direct knowledge of that. (ECF DKT #33-4 at 8).

Plaintiff did not accept any of the "discount proposals" in Defendant's Letter and did not make any payments. After June 2019, Plaintiff received no further written or telephonic communications from Defendant. The debt is no longer on her credit report. (ECF DKT #30

at 71-72). The Letter did not threaten suit; in fact, it clearly stated that Defendant would not sue Plaintiff because of the age of the debt. Whether or not Defendant or another collection agency would change that policy in the future is speculative at best. If Plaintiff is claiming a statutory violation, she must do more. She must show a material risk of real harm to a concrete interest, not simply a hypothetical "marginal increase" in the risk of harm. *McCloud*, 388 F.Supp.3d at 968.

Plaintiff Angela Barnes has not suffered any actual or imminent injury nor concrete and particularized harm or material risk of harm as the result of the June 5, 2019 Letter. Plaintiff lacks Article III standing to pursue her FDCPA lawsuit against Defendant Midland Credit Management, Inc. both on her own behalf and as a representative of a putative class.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #31) of Defendant Midland Credit Management, Inc. for Summary Judgment is granted.

**IT IS SO ORDERED.**

**DATE: July 12, 2021**

                                        s/Christopher A. Boyko
                                        **CHRISTOPHER A. BOYKO**
                                        **Senior United States District Judge**